## THE ALGIERS.[1]

### (District Court, E. D. Pennsylvania. May 13, 1884.)

1. COLLISION—NEGLECT TO EXHIBIT TORCH—REV. ST. § 4234.
    Where a schooner and a steam-vessel are approaching each other in the night-time, it is the duty of the schooner to show a lighted torch, as required by Rev. St. § 4234.
2. SAME—SIDE-LIGHTS.
    Where the side-lights are plainly seen, and the situation and course of the vessel fully understood, in ample time to avoid collision, the failure to display the torch may be held unimportant ; but the fact that the side-lights were burning, and could have been seen by a careful lookout from the steamer, will not excuse the neglect of the sailing vessel to exhibit a torch, which might have prevented the collision.

Hearing on Libel, Answer, and Proofs.

Libel by the master and owners of the schooner William L. White against the steam-ship Algiers, for a collision, in which the steam-ship sank and destroyed the schooner and her cargo. The Providence Washington Insurance Company intervened for their interest, as insurers of the schooner's cargo. The collision occurred shortly before 1 A. M. on November 19, 1882, about 25 miles south-east-wardly from the capes of the Delaware. The wind was fresh from between N. and N. by E., with a high sea. The moon had set at half past 12, leaving the night somewhat cloudy, although many witnesses testified that the stars were visible, and several that, despite the clouds, it was possible to see a vessel, "lights and sails and all," a mile or a mile and a half away; all agreed that it was a good night for seeing lights. The schooner White was sailing N. W. by W., and making between three and four knots per hour, close-hauled, her booms being inboard almost upon a line fore and aft. She was a good sailer, and held this course steadily, keeping to within about five points of the wind up to the moment of collision. Her red and green lights were of good quality, and were trimmed and burning brightly. Her binnacle light (an ordinary lantern about seven inches in diameter) was carried in the binnacle box, on top of the cabin-roof, a position unusually high. The Algiers was heading N. N. E., making eight knots an hour. Her white light was seen off the port beam by the schooner's lookout about two hours before the collision, and her green light was visible in the same direction for at least half an hour. Neither the schooner nor her lights were seen by the crew of the steamer until at most 15 minutes before collision. At this time, as the steamer's lookout testified, he saw with his naked eye a white light about three points on the starboard bow; this he supposed to be the distant mast-head light of a steamer, whereas it was alleged by respondents to have been, in reality, the binnacle light of the

[1] Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

schooner, placed in an improperly prominent position. The officer on deck examined this light with a glass for from three to five minutes, when the schooner's red light suddenly appeared almost dead ahead. The steamer's helm was at once ported, and as her advancing mast-head light revealed the sails and spars of the schooner, the engines were reversed. At the same moment, the ship struck, head on, just abaft the schooner's fore-rigging, cutting into the schooner from 10 to 15 feet, and sinking her instantly. The mate of the schooner swore that, on seeing the steamer approaching, he grasped the binnacle lantern and swung it at the steamer for five or six minutes; those witnesses on the steamer who saw the lantern denied that it was swung long enough before the moment of collision to be of the least benefit. At no time did the schooner display to the approaching steamer a lighted torch.

*S. M. Thomas, H. Galbraith Ward,* and *Henry R. Edmunds,* for libelants.

Although the displaying of a lighted torch is required by statute, an omission to observe this regulation will not fix the loss upon the negligent party, unless that omission contributed to the accident. A similar rule has been laid down where lights and lookouts have been neglected. *The Farragut,* 10 Wall. 334; *The Fannie,* 11 Wall. 238; *The Dexter,* 23 Wall. 69; *The Wanata,* 95 U. S. 600; *The Tillie,* 13 Blatchf. 514; *The Buckeye,* 9 Fed. Rep. 666. Therefore, where the sailing vessel was seen, or, under the circumstances, should have been seen, the neglect to display a torch has been held immaterial. *The Scottish Bride,* 8 Phila. 151; *The Tonawanda,* 11 Phila. 516; *The Leopard,* 2 Low. 242; *The Catherine Whiting,* 3 Fed. Rep. 870; *The Roman,* 14 Fed. Rep. 61. In this case the steamer's lookouts should have seen the schooner's red light long before they did; it was negligence in them not to have done so. Failing to see the red light, there is no reason to suppose they would have seen the torch. Confer *The Oder,* 8 Fed. Rep. 172.

*E. D. McCarthy* and *Morton P. Henry,* for intervenors.

The cargo must recover if the steamer's fault contributed to the collision. *The Atlas,* 93 U. S. 302. The measures of time in collision cases are always inaccurate and unreliable. *The Carroll,* 8 Wall. 304. From their courses, if the steamer saw the schooner's lights at the time stated, the collision could not have occurred. The "fifteen minutes" was probably less than five, and it was negligence in the steamer not to have seen the schooner's red light sooner.

*Curtis Tilton* and *Henry Flanders,* for respondents.

The failure to display the torch was *per se* negligence, under section 4234, Rev. St. *The Pennsylvania,* 12 Fed. Rep. 916; *The Excelsior,* Id. 203; *The S. H. Crawford,* 6 Fed. Rep. 911; *The Narragansett,* 3 Fed. Rep. 253; *The Sarmatian,* 2 Fed. Rep. 916. The schooner permitted a white light to be visible from her deck. This was a misleading signal, and should condemn the vessel displaying it.

*The Scotia*, 14 Wall. 183; *The Narragansett*, 11 FED. REP. 921; *The Rob Roy*, 3 W. Rob. 197; *The Mary Honnsell*, L. R. 4 Prob. Div. 207; *The Scotia*, 7 Blatchf. 308. The steamer is only required to show that she had a vigilant lookout, and that the lights were not seen; why they were not seen she is not bound to prove. *The Elenora*, 17 Blatchf. 88; *The Frank Moffatt*, 11 Chi. Leg. N. 114; *The Sam Weller*, 5 Ben. 293; *The Nichols*, 7 Wall. 657.

BUTLER, J. The libelant failed to display a torch. In this she disregarded the law, and was plainly in fault. She answers, however, that this fault did not contribute to the disaster, and has called a large number of witnesses who support the assertion. This testimony is deemed of little, if any, value. In view of the circumstances shown, the positive declaration that the display of this light would not have tended to avoid the collision, seems like a reckless venture. The direct tendency of its absence was to produce the disaster. The law has determined the presence of such a light to be essential to safety, under circumstances such as existed when this collision occurred. That the flaming torch is more likely to attract attention than the ordinary side-light, is very manifest. This greater likelihood of arresting attention led to its adoption. How, then, can it be said that this light would not have been seen, and the collision avoided, if it had been displayed? Granting that the respondent's lookout was careless, how can it be affirmed that the glare and flash of the torch would not have attracted the attention of even this careless lookout? So much less frequently displayed than the ordinary light, and bearing the character of a danger signal, its presence could hardly have been overlooked. There are, of course, circumstances in which the failure to display it may be held unimportant; as where the side-lights were actually and plainly seen from the approaching steamer, and the situation and course of the vessel fully understood, in ample time to avoid collision. Here it is not suggested that these lights were seen. It is clear they were not. Whether they *should* have been, is a different question, and unimportant in this connection. The libelant was plainly in fault. She saw the steamer in abundant time to warn her, and yet did not. That the situation demanded it, seems too plain for discussion. The exhibition of the globe light, at the moment of collision, was of no value.

Was the respondent also in fault? The only fault imputed is in having an insufficient lookout. It must be conceded that the libelant's side-lights were burning. Her witnesses fully establish this fact. I am asked to infer from it that the steamer's lookout was imperfect. If the case rested here, the inference would seem just, and might be adopted. But the respondent's testimony is equally full and positive that the steamer's lookout was *vigilant*, and that the lights were not seen. Before this direct evidence the inference must give way. It must do so, unless, indeed, the respondent's witnesses are perjured.

A suggestion of perjury, however, would be unwarranted.   As reasonably might it be said that the libelant's lights were not burning because the respondent's witnesses did not see them.   The lights were burning, and the respondent's lookout was vigilant and sufficient. No other conclusion is admissible.   The latter fact is as satisfactorily proved as the former.

Why the lights were not seen need not be determined.   The case, in this respect, is strikingly similar to that of *The Narragansett*, 3 FED. REP. 253, and 11 FED. REP. 291; and what is there said on this subject is equally applicable here.   A solution of the problem may, however, be found in the suggestion that the position of the vessels was not that ascribed to them by the libelant.   A slight change would so place them that neither side-light could be seen from the steamer, and thus reconcile all the testimony.   That such was their position, seems very probable, if not entirely clear, from the facts that the side-light was not seen, and that a white light, corresponding with the libelant's binnacle light, (which was carried unusually high,) was seen.   There is little testimony less satisfactory than that respecting the position of vessels preceding a collision.   The reliance placed on the supposed direction of the blow received by the respondent, is not justified by anything in the case.   She sank immediately after receiving it, barely affording time for the crew to escape.   The officers' hasty glance at the wound was sufficient to see its fatal character, but not to form a judgment respecting the question under consideration, and it is quite certain this was not in mind.

The libel must be dismissed, with costs.